And the next case before us this morning is United States v. Herrera-Salazar. It's 24-7029. And the next case before us this morning is United States v. Herrera-Salazar. May it please the Court, my Honorable Opponent, I am Blaine Myrie, Counsel for Defendant Appellant Jesus Herrera-Salazar. The question here is whether Herrera-Salazar's conviction in the Eastern District of Oklahoma for unlawful reentry under 1326A violated the Double Jeopardy Clause. And the specific issue is whether the Double Jeopardy Clause prohibits the conviction where it is undisputed that Herrera-Salazar was not removed from the United States after he served his prison sentence in the Texas case when he was released in 2021. Well, he's actually still serving his sentence in the Texas case, isn't he? The supervisor released as part of his sentence. Well, correct, but he was no longer in BOP custody as of 2021. But yes, still serving his supervised release, although I don't know if it has expired yet. Well, he's been deported now. He was deported following his release from prison in Oklahoma and was deported about, I think, a little over a year ago. The facts in this case, though, are essentially undisputed. He was removed from the United States in February of 2015. At some time thereafter, he reentered the United States. And then in May of 2020, he was found in Brownsville, Texas, and was arrested there and charged with an offense under 8 U.S.C. 1326 for being unlawfully, an alien unlawfully found in the U.S. after deportation. He pled guilty in the Texas case and was sentenced to prison, which he served. And then he was released from prison in Texas in June of 2021. And he was instructed in the order, his sentencing order, that once he finished his term of imprisonment in Texas, if not deported within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released. Correct. And he did that? He did that. He did exactly what he was ordered to do. And then while in April 2022, so another 10 months after his release and when he was on the supervised release in the Texas case, he was in the Eastern District of Oklahoma where he was supposed to be, and he was arrested and again charged with a violation of 1326A. Well, I think the government's argument is that based on all his prior history, immigration history, he was well aware, and in fact I think he testified to this at the hearing, he was well aware that he was not allowed to be in the United States. Correct? Correct. But under the Ninth Circuit rule from the Mezzo-Rio case and the Sanchez-Aguilar case, there has to be a removal from the United States and a subsequent reentry. There has to be a period of time outside of the United States between the first conviction and the second conviction. In both of those Ninth Circuit cases, there was such a intervening period of absence from the United States. Mezzo-Rio, the original conviction was 1975. He's arrested in 1978 and then convicted in 1979. But he admitted when he was arrested in 1978 that his home address was in Mexico and that he had crossed the border that day. So in that case, being present outside of the United States double jeopardy requirement was met. In the Sanchez-Aguilar case, similarly, there was a 2009 conviction and then a 2010 removal and a 2011 arrest and charge. And the majority in that case said that after he served his sentence, the defendant served his sentence for the 2009 conviction, he was immediately removed from the U.S. following completion of his sentence for the first conviction. And therefore, the government had proven that he was outside the United States before it initiated the second prosecution. Where in Section 1326A do you see a requirement that the government prove that someone has reentered in order to be convicted of being found in the United States? It's not in the statute. We're relying on the case law from the Ninth Circuit which says and interprets 1326A to require it in order to avoid double jeopardy, in order to avoid being arrested at the prison gates is what they call it. You know, for an example here, if Mr. Herrera Salazar had been released on bond after his arrest in Oklahoma, under the government's theory, he could then have been arrested and charged again for the same offense and it would not be double jeopardy. But it really isn't the same offense because it's whether you were found in the United States and he's been found in the United States on different dates. Isn't it somewhat like being a felon in possession? Your felony is still the same. In this case the fact that he's been removed once remains the same and then any time he's found in the United States he's in violation and the government under the statute doesn't have an obligation to show when or how he entered. And that is the government's position and I would agree with the analogy to the firearms without getting into the Bruin question of whether you can even bar that under 922 anymore. Didn't they rule on that? Yeah, I just lost the case on that. This Court has said that the found in offense is first committed at the time of reentry and continues to the time when the defendant is arrested for the offense. My point is that the Ninth Circuit has this, what I would call, protective gloss on the statute that it believes is required because of the double jeopardy clause and it's my position that this Court should adopt that as well to avoid these type of serial prosecutions. What was Mr. Herrera-Salazar supposed to do? Self-deport or maintain his relationship with his probation officer? Well, isn't that really a due process argument? Aren't you really arguing more of a due process argument in that he was ordered, if he wasn't deported, to stay in the United States for two years and report to his probation officer? That doesn't really sound like a double jeopardy issue. There is definitely a due process component to it. However, in the trial court, the issue was raised with a motion to dismiss the indictment on double jeopardy grounds and so that issue was properly preserved. I don't believe it was treated as a due process question. It wasn't argued as a due process, so obviously it wasn't treated. Yeah. But in a double jeopardy case, we typically start with the statute and we look at what the elements are and we determine whether any of the elements that are, and typically in a double jeopardy argument, you're talking about a single criminal event where multiple crimes are charged and you're trying to figure out whether you really have different crimes based on different elements.  Isn't that the typical double jeopardy scenario?  I mean, it doesn't really feel like what we have here. And that's why we go back to the continuing offense. The offense is a continuing one. It starts upon the reentry into the United States and continues until the arrest. And it's our contention that that is the completed offense. And charging him again without having a subsequent reentry is the double jeopardy problem. That's the case. That's the rule out of the Ninth Circuit. And the rule is that the same removal order. Well, what if he had been ordered, instead of this order that says if you're not deported in 72 hours, what if it said self-deport? And he didn't do it. Could he have been charged again with being found in the United States? Sure, he could, couldn't he? Yes, I think so. Because he'd been ordered to leave and have, that would be similar to the Pena-Hymae case out of the Ninth Circuit. Where he comes in for one day. Comes in for one day for a custody hearing and then stays. You don't have a subsequent reentry. In my, in the Ninth Circuit case, you do have a subsequent reentry, which was with permission for, paroled for one day. Right. In my example, there's no subsequent reentry. He didn't self-deport. Right. He's still being found in the United States and it's not a double jeopardy problem, is it? I don't believe so. But that's not this case. And I think it does matter. But does it matter because of double jeopardy is my, my analytical confusion. It does under the Ninth Circuit rule. And that's what we're asking this Court to adopt. Are you really saying that he's being found in the United States with, with authorization because the statute requires without authorization? The fact is he didn't have authorization to be in the United States. But it seems like you're almost suggesting that. It's a catch-22. He had authorization because he was told to report to the probation officer in Oklahoma. Yeah. And that's not, of course, authorization to remain in the United States. Correct. Correct. It's not. But as, as the defendant, and he's told and given a bus ticket from post-Texas to Heaven or Oklahoma and has said, you need to report, so he does that. And then he gets arrested. And that is, in our view, and under the, the Ninth Circuit rule, is a double jeopardy violation because there was no subsequent reentry after the release from prison in Texas. Well, in Judge McHugh's hypothetical, there's no reentry either. Had he been told to self-deport, ordered, ordered self-deport, and he disappears for a while? Well, I think that's similar to. And you're suggesting that in that case, he could have been charged with the violation of 1326. I think so. And, again, that's similar to the Pena-Hyme case. Now, I understand there was a reentry there, but the, the issue was that the permission to be there expired, and he didn't leave. If he's ordered to leave and stays past the date when he's told to leave, then I think it wouldn't be a double jeopardy issue. But that's not what we have here. So you are focusing on the without authorization language in the statute? Is that really what this is about? Well, I think it's, it's a component of it, but, but it really is based on the Ninth Circuit rule, which is that the. Well, we have to interpret the statute. And you said that the statute does not support your interpretation. I'm trying to figure out. The Ninth Circuit. You're asking us to put, read words into the statute. Well, I'm asking you to adopt the Ninth Circuit rule, which has said that. It's not a rule, it's an interpretation. And we've got to interpret it ourselves, so. Right. It's case law. We've got to figure out how to get there. It's case law that, that on the facts of this case would produce a double jeopardy violation. Well, it's case law that's not binding on us. No, it is not. And we have to do our own analysis that starts with the language of the statute. And so we're trying to put your argument, I think Judge Moritz is trying to help you put your argument into a statutory framework by arguing, asking, are you arguing he had authorization to be here? Well, what I'm saying, no, I'm not saying that. I'm saying that he was told where to go, but what I am saying is that the offense ended, the 1326A offense ended when he was arrested in Brownfield, Texas and went to prison for that. The government cannot charge him again for that same offense without a subsequent reentry. They cannot rely on a prior removal order. But you just said they could, they could if he disappeared for a while and if there was a self-deportation order. If there was a self-deportation order, which we don't have here. I think that is a critical difference. Well, but a self-deportation order doesn't require a reentry. And the way I understand your argument, you're suggesting that the statute requires a new reentry in order to have a new offense. Right. It requires under the statute. And in this hypothetical, there's no reentry. So I'm trying to understand what it is that you want us to read into the statute. The Sanchez-Aguilar case, so long as the government proves the defendant has been deported outside of the United States after each conviction before he is again prosecuted for violating 1326. It's a double jeopardy issue. Unless, of course, he was ordered to self-deport. I'd like to reserve the balance. I'll give you a little bit more time. But I have a question of what difference does any of this make. Your client can't be in the United States. He admits he can't be in the United States. And he's now been deported. Because it's an additional felony on his record. Which would be relevant if he came into the United States again. And he's come back before, so we can't assume that that won't happen. Okay. May it please the Court, Counsel. Patrick Flanagan on behalf of the United States. We're asking this Court to affirm the judgment and conviction of the district court in the underlying case against Mr. Herrera Salazar. The defendant's double jeopardy arguments are based on an interpretation of Ninth Circuit case law, which is not binding on this Court. And which, Judge McHugh, as you noted, doesn't appear anywhere in the statute. Well, let me ask you this. You've got a person who English isn't his first language. And he's been arrested and deported. And he's arrested again. And he serves his time. And then he's given an order of supervised release that tells him, if you are not deported within 72 hours, report to the probation office. And you've got two years of supervised release to serve. I mean, it seems to me he was told, if you're not deported, you must serve two years of supervised release, which is what he was doing. He was still serving the sentence for his prior conviction, wasn't he? He was still serving the supervised release on April 1st of 2022 when he was arrested for unrelated criminal conduct that violated the terms of his supervised release. He's not unrelated. He's been ordered to stay in the United States and serve supervised release because he wasn't deported. And he's arrested while he's serving that portion of his sentence. Yes, Your Honor. And that's problematic, isn't it? It's not ideal in these circumstances, Your Honor. One thing I would note for the Court, Mr. Herrera Salazar has, and was shown in the record, multiple prior removals dating back from 2005. And I'm sure when he was ordered to serve two years of supervised release in Oklahoma so he could live at home with his wife and children, he was like, oh, please don't throw me in that briar patch. But at the end of the day, that's what the order says. That was the Texas sentence, Your Honor, when he came to Oklahoma immigration notice. He was serving the Texas sentence when he was arrested on the Oklahoma violation. Yes, Your Honor. But he did not have authority to be in the country at that point, as he acknowledged in his trial testimony, that he knew he was not supposed to be here and remained. It was somewhat. Well, he also argued that I was doing what they told me to do. They bought me a bus ticket and sent me to Oklahoma, and I had a probation officer coming over to my house and doing home visits during this period of time while I was serving my supervised release as ordered by the Texas sentencing judge. Yes, Your Honor. But he did not have permission from the Attorney General or the Secretary of Homeland Security to be present in the United States, which is what's required under 1326. And he knew that from his various violations and convictions throughout the past 20 years, approximately 20 years. So he was well aware that that did not entitle him to remain in the United States. It was somewhat self-serving for him to remain and say, oh, my probation officer said I could. Because he also did not report to INS or give any kind of notice that he was, in fact, in the country to immigration authorities. So he was familiar with the process. Having been in the United States prior to 2005, he knew that INS and ICE needed to know where he was. And he did not take any steps subsequent to his release on the Texas imprisonment. Judge Murphy has a question. Sorry, Judge. Was the benefit to the government for prosecuting him in Oklahoma was to make him serve time so that it would teach him a lesson not to return a fifth time? Was that the benefit to the government? Yes, Your Honor. Part of the impetus for this prosecution was the deterrence of this defendant from returning to the United States. I would note that he was deported in April of 2024. As far as the United States is aware, as of this morning, he has not returned to the United States. So in that respect, it has been successful in deterring him to this point. Well, wait. Merely because you don't know whether he's returned, doesn't mean he has not returned. You wouldn't remember that. I would, Your Honor. But every indication that we currently have. So we don't know. We don't know whether there was any benefit to the government from doing this as opposed to just deporting him. Correct? Well, Your Honor, we kept him from reentering until at least April of last year and other crimes of him because he's permanently barred. Well, he was already permanently barred, wasn't he? Yes, ma'am. So you could have just deported him from Oklahoma because he was already not allowed to be in the U.S.? Yes, Your Honor. He could have just been deported. It seems very odd to me that we get a sentence of supervised release for a person who's not allowed to be in the United States that the order itself requires them to be in the United States unless they are deported and then nobody deports them. It seems like you're giving them very confusing instructions on what to do. I mean, he's still serving a sentence. Yes, Your Honor. That is a confusing result from the Texas court. Well, it's confusing in Oklahoma as well. I would think it would be odd for the Oklahoma probation folks to have these circumstances. Is this typical? Is Texas busing defendants to Oklahoma for supervised release and then having them arrested in Oklahoma? Your Honor, I can't say that this is typical in my experience in the Eastern District of Oklahoma. This was the first instance I had seen in my time as an AUSA. I have not seen it subsequent to Mr. Herrera Salazar. Wouldn't this be a pretty good circumstance not to charge, just to let this one go perhaps? Well, Your Honor, he was still – Where he's got mixed signals from the government here. He's told to stay. He's told to report. If he's not deported, he's supposed to stay. He's supposed to report. He does all those things and then he's arrested. Yes, Your Honor. Well, his presence in the United States is – he was found in the United States having entered unlawfully multiple times. He has multiple convictions for this. I understand all that. I'm just saying he also is under supervised release from a federal district court in Texas. And presumably that court has some authority too. And the order itself, as Judge McHugh read, tells him what he's supposed to do or be in violation of that court's order. Yes, Your Honor, it does. Well, could they have charged him with being present in the United States while he was still serving his prison sentence? Your Honor, there are instances of defendants being convicted of and being charged with 1326 when they're found in prison and receiving the sentencing enhancement for committing a crime while under supervision for an unrelated offense. Some of those are cited in the briefing. So, in fact, if an individual is, in fact, in prison and can be convicted of being found in prison. If they're in prison for being found in the United States, immigration violation, right, and they're serving the portion of the sentence that's the actual incarceration. And you're saying that they can be charged with being found in the United States while they're in the custody of the Board of Prisons serving their incarceration. Your Honor, under those circumstances, it would depend heavily on the facts of the individual defendant. If, as here, this defendant has multiple prior removals and reentries, conceivably, yes. Well, how does he remove himself from the United States if he's been put in prison as incarcerated as part of his punishment for being found in the United States? He would not be able to without escaping. It would be, he would have a defense. It would be difficult. He would have a pretty solid defense, but he would still be able to be charged based on prior removals and the reading of the statute and case law. Okay, so if I consider being ordered to serve supervised release as part of his sentence for his prior being found in the United States offense under 1326A, isn't that a defense to a new charge for a new violation while he's still subject to the sentencing order? From a due process consideration, perhaps, Your Honor, that was not raised below. It was the double jeopardy argument. It wasn't raised here in the briefing. The double jeopardy argument and double jeopardy holdings from the Ninth Circuit don't really apply in these circumstances to this specific defendant given his many removals and returns. They don't serve to stop the arrest at the prison gates, which the Ninth was concerned about in Meza de Villarejo and Sanchez Aguilar given the facts and circumstances of this defendant, Mr. Herrera Salazar's past removal and returns. Can you tell me what the statute of limitations is on 1326 Crimes? I believe five years. And when does that start to run? When the offense is committed? When the offense is committed, Your Honor. When are these offenses committed? There are a number of times when they are committed. Well, let's talk about in this case, the found-in case. Yes, when he is found in the United States. When he's found in the United States, you have five years to prosecute. Yes, Your Honor. But what is the meaning of that statute of limitations if the very next day he can be found in the United States again and the day after that and the day after that? And really any moment he's there, the statute of limitations is beginning to run anew. Isn't that right, under your theory? Yes, Your Honor. If that's when the crime is committed, that's nonsensical. There is no statute of limitations then. Well, Your Honor, he commits the offense when he's found in, and this Court and others... Right, but you're saying that is just ongoing. You don't have to have a separate deportation. He doesn't have to leave the country and come back in. He can be found in at any time, any day, day after day after day after day. Your Honor, this Court and others have found that the found in happens when it's brought to the attention of the immigration authorities. I understand that, but we're now talking about your argument, which is that this statute doesn't require the individual to leave and reenter in between, that you can rely on a previous reentry that's already been prosecuted. He's already been found in and prosecuted. And you're saying he can be found in again forever and ever and ever. There essentially is no statute of limitations on being found in under your theory. Isn't that right? That is a fair characterization for this offense in these circumstances, Your Honor. Judge Murphy has a question. The cases that you referenced where somebody was charged under the found in provision while they were still in prison, in any of those cases, was a due process defense raised? Your Honor, the cases I've found with respect to that was an argument against the sentencing enhancement of two levels being assessed against them, and those were upheld. I don't recall, as I stand here at this moment, whether due process was raised as a defense to that sentencing enhancement, but the sentencing enhancement has been assessed across circuits, including in this one. Well, in those cases, and I'm not familiar with them, are you saying they were in prison for another offense, not a 1326 offense? So we don't even know if in those cases they were being charged under 1326 for a deportation for which they'd already been charged. You see what I'm saying? Those cases don't necessarily involve this circumstance, right? Correct, Your Honor. None of them. Those imprisonments were generally, to my recollection, were for other offenses, not 1326. So there wasn't this issue about whether you have to leave the United States and reenter in order to be charged separately under the found-in provision. Yes, Your Honor. And can you point to a single case where, other than the Ninth Circuit cases, which we've been discussing that have gone the other way, where someone's been prosecuted under your theory, which is you don't have to leave and reenter? Your Honor, in my brief, I do cite to a Tenth Circuit case, it was... Yeah, but in that case, I think it's... We don't actually take up that issue. It's not clear whether... Nobody says whether they've left and reentered, right? No, that was not addressed in that case. So we don't really have that. Not specifically, no, Your Honor. Just one point that I do want to make in the remaining 20 seconds. My co-counsel said something about reentering and continuing until you're found. A word that was left out is surreptitious reentry. So this case is much more similar to Pima Jamey, where there is not a surreptitious reentry. And I see that I'm out of time, so thank you.  And I agreed to give you one minute of rebuttal, so I will do it. Hold on one second, one minute. Just one is fine. I think the Court might have been referring to the Valencia-Martinez, the unpublished case. That case, I think, is really distinguishable. First of all, it's not clear whether there was or was not a reentry. And it was a 2255 that included a 2255 waiver. It was pro se. I actually tried to look up the underlying pleadings and couldn't get access to them, so I don't really know how useful that case is. I think the Ninth Circuit cases are useful. And I would look at this Court's Hernandez case, Hernandez-Noriega, where it was one of those sentencing cases, the two-point criminal history bump, based off a guilty plea. But there they talk about the found-in offense being a continuing offense, and the found-in is the completed crime occurs when the INS or whoever it is, the immigration officials, are aware of the presence in the United States. Judge Murphy has a question. You would agree, counsel, that the reason for these Ninth Circuit cases is to avoid or to address the anticipated problem of a hypothetical arrest the moment somebody is released from prison? Correct. That's the purpose of those cases. Correct. Isn't that problem solved by the ability of the defendant to raise a due process claim rather than a double jeopardy claim in saying that he did not get due process because he was apprehended the moment he stepped out of the gate? I would agree, Your Honor, that that is an argument that could be raised. It was not raised and preserved below, and I did not argue it as plain error. Thank you. Okay. We will take this matter under advisement. We appreciate your arguments.